IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| ISHMAEL K WHITAKER, | : | |
| Plaintiff, | : : | |
| VS. | : : | NO. 4:22-CV-00038-CDL-MSH |
| Sergeant JEFFERSON, *et al.*, | : : | |
| Defendants. | : : | |
| _____ | : | |

**ORDER AND RECOMMENDATION**

In accordance with the Court's previous orders and instructions, Plaintiff Ishmael K. Whitaker, a recently-released former inmate, has filed a non-prisoner's motion for leave to proceed *in forma pauperis* in this action. Plaintiff's submissions indicate he cannot now pay the filing fee. Plaintiff's motion (ECF No. 10) is thus **GRANTED**, and his Complaint is ripe for screening pursuant to 28 U.S.C. § 1915A and § 1915(e). Having conducted such screening, the undersigned concludes that the following claims shall proceed for further factual development: (1) claims that Defendants Pattillo and Cole failed to prevent Plaintiff's suicide attempt; (2) excessive force claims against Defendant Jefferson; (3) retaliation claims against Defendant Jefferson; and (4) bodily privacy claims against Defendant Jefferson. It is **RECOMMENDED**, however, that Plaintiff's remaining claims be **DISMISSED without prejudice**.

**PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINT**

**I.      Standard of Review**

The Prison Litigation Reform Act ("PLRA") obligates the district courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. *See* 28 U.S.C. § 1915A(a). Screening is also required under 28 U.S.C. § 1915(e) when the plaintiff is proceeding IFP. Both statutes apply in this case, and the standard of review is the same. When conducting preliminary screening, the Court must accept all factual allegations in the complaint as true. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003). *Pro se* pleadings, like the one in this case, are "'held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.'" *Hughes*, 350 F.3d at 1160 (citation omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).

A claim is frivolous if it "'lacks an arguable basis either in law or in fact.'" *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citation omitted). The Court may dismiss claims that are based on "'indisputably meritless legal'" theories and "'claims whose factual contentions are clearly baseless.'" *Id.* (citation omitted). A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot

2

"'merely create[] a suspicion [of] a legally cognizable right of action.'" *Twombly*, 550 U.S. at 555 (citation omitted). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

**II.     Factual Allegations**

Plaintiff's claims arise from his recent incarceration in the Muscogee County Jail ("MCJ") in Columbus, Georgia, beginning on or around January 28, 2022. Compl. 5, ECF No. 1. On that date, Plaintiff alleges he sent his public defender, Defendant Morelock, two emails indicating that he was feeling suicidal "do to the fact of how she was handleing his case [sic]." *Id.* Plaintiff contends Defendant Morelock did not notify MCJ officials concerning his suicidal thoughts despite knowing that he had "serious mental health issues and had attempted suicide on several other occas[]ions." *Id.*

On January 28, 2022, Plaintiff also sent a prison doctor, Defendant Pattillo, a message via kiosk stating "that he was hav[]ing constant thoughts of suicide." Compl. 6,

ECF No. 1. Plaintiff states that Defendant Pattillo responded that "they did not have any counselors available because of the covid 19," and she did not provide Plaintiff with any other treatment or assistance. *Id.* Plaintiff contends that Defendant Pattillo likewise knew that Plaintiff had serious mental health concerns and knew about Plaintiff's previous suicide attempts. *Id.*

On January 31, 2022, at approximately 7:00 AM, Plaintiff advised Defendant Cole, a prison guard, that he was suicidal. Compl. 7, ECF No. 1. Defendant Cole told Plaintiff "there was nothing that she could do about it and left out of the dorm." *Id.* Plaintiff contends that Defendant Cole was also familiar with Plaintiff's mental health history and past suicide attempts. *Id.*

Plaintiff ultimately attempted to commit suicide around 11:00 AM on January 31, 2022, by cutting his forearm multiple times. Compl. 8, ECF No. 1. Plaintiff was taken to medical by unspecified personnel and assigned to a "safety cell," where he was told there were no smocks or mattresses available. *Id.* Plaintiff was given only a blanket to cover himself. *Id.* Plaintiff also alleges that jail officials do not clean the safety cells on a regular basis, and as a result they are "unsanitary." *Id.* at 11. Specifically, Plaintiff contends there has been "feces on the walls of all of the H.S.P. cells that has been on the walls ever[] since Plaintiff came to the county jail back in March 2021." *Id.*

On February 3, 2022, Defendant Jefferson and another prison guard approached Plaintiff in the safety cell, and Defendant Jefferson told Plaintiff to "give [him] that blanket." Compl. 8, ECF No. 1. Plaintiff protested, attempting to explain that he would be naked in the cell with several other inmates if he gave Defendant Jefferson his blanket,

4

but Defendant Jefferson told Plaintiff he would take the blanket if Plaintiff would not give it to him. *Id.* at 8-9. Defendant Jefferson then punched and elbowed Plaintiff, tried to sweep him off his feet, and snatched the blanket away from Plaintiff, leaving him naked in the cell until he was discharged about nine hours later. *Id.*

Plaintiff contends Defendants' actions and inaction violated his constitutional rights, and as a result he primarily seeks monetary damages. Compl. 16, ECF No. 1.[1]

### III.   Plaintiff's Claims

#### A.   Claims against Doe Defendants

The Court first notes that Plaintiff does not know the names of several individuals he wishes to sue in this case, and therefore he simply lists them as John or Jane Doe Defendants. Generally, "fictitious party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (per curiam). The only exception to this rule is when the plaintiff's description of the defendant is so specific that the party may be identified for service even though his actual name is unknown. *See id.* (citing *Dean v. Barber*, 951 F.2d 1201, 1215-16 (11th Cir. 1992)). Therefore, to proceed against an unnamed defendant, a plaintiff must provide a "description of some kind which

---

[1] Plaintiff also requests that Defendant Jefferson be charged with simple battery, but the United States District Courts have no authority to order state or federal law enforcement agencies or prosecutors to initiate investigations or prosecutions. *Otero v. U.S. Attorney Gen.*, 832 F.2d 141, 141 (11th Cir. 1987). Plaintiff, a private citizen, likewise has no power to originate criminal pleadings on his own initiative. *Id.* Thus, Plaintiff may not pursue this form of relief in this action. *See Oliver v. Collins*, 904 F.2d 278, 281 (5th Cir. 1990) (affirming dismissal claims against sheriff who failed to press criminal charges against plaintiff's assailant because "[e]ven if [the sheriff] were the person with authority to decide whether or not to pursue criminal charges . . . "[t]he decision to file or not file criminal charges falls within [the] category of acts that will not give rise to section 1983 liability").

is sufficient to identify the person involved so that process can be served." *Dean*, 951 F.2d at 1216 (internal quotation marks omitted).

Plaintiff has provided a physical description of at least one individual, and he also surmises that discovery may reveal the true names of the Doe Defendants in this case. Compl. 11, ECF No. 1. While these may be "relevant consideration[s] when determining whether a plaintiff can pursue a claim against an unnamed defendant[,]" they are not sufficient absent some way of identifying these Defendants for service. *Vielma v. Gruler*, 808 F. App'x 872, 880-81 (11th Cir. 2020) (per curiam) (observing that "our precedent has never permitted John Doe pleading solely on the ground that discovery might reveal an unnamed defendant's identity" instead requiring "an unambiguous description of a defendant that enables service of process"); *see also Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1318 n.4 (11th Cir. 2015) (declining to address claims against "John Doe Deputies" because they were "not proper parties" in the action); *Richardson*, 598 F.3d at 738 (plaintiff's description of "John Doe (Unknown Legal Name, Guard, Charlotte Correctional Institution" was "insufficient to identify the defendant among the many guards employed at CCI"). The claims against the Doe Defendants in this action should therefore be dismissed without prejudice. As noted below, however, some of Plaintiff's claims against other Defendants shall proceed in this case, and if discovery reveals the names of the Doe Defendants, he may "amend his pleadings or file a new case once he knows the name of other responsible parties." *Vielma*, 808 F. App'x at 881.

        B.    <u>Claims for Failure to Prevent Suicide Attempt against Defendants Morelock, Pattillo, and Cole</u>

Turning to Plaintiff's substantive claims, Plaintiff first alleges that he told Defendants Morelock, Pattillo, and Cole that he was suicidal, but they did not provide him any assistance and he eventually harmed himself. The Fourteenth Amendment confers upon inmates the "right to be protected from self-inflicted injuries, including suicide." *Turner v. Phillips*, No. 21-12370, 2022 WL 458238, at *3 (11th Cir. 2022) (per curiam) (internal quotation marks omitted). "An officer violates that right when he exhibits deliberate indifference to a detainee's suicide—that is, when he knows there is a strong likelihood that a detainee will harm himself yet disregards that risk through conduct that is more than mere negligence." *Id.* "And when prison officials 'directly responsible for inmate care' know that 'an inmate has attempted, or even threatened, suicide, their failure to take steps to prevent that inmate from committing suicide can amount to deliberate indifference.'" *Id.* (quoting *Greason v. Kemp*, 891 F.2d 829, 835-36 (11th Cir. 1990)).

In this case, Plaintiff alleges that he communicated directly with Defendants Pattillo and Cole and told them he was having suicidal thoughts. Compl. 6, 7, ECF No. 1. Plaintiff alleges that Defendant Pattillo told him there were no counselors available to assist him, and she did not move him to a suicide prevention cell or provide Plaintiff with any other assistance. *Id.* at 6. Plaintiff also alleges that Defendant Pattillo knew Plaintiff had attempted suicide on multiple prior occasions. *Id.* Plaintiff alleges that Defendant Cole told him "there was nothing that she could do about" Plaintiff's suicidal thoughts and left the dorm without assisting Plaintiff. *Id.* at 7. Plaintiff contends that Defendant Cole also knew Plaintiff had "serious mental issues because the Plaintiff has been constantly in an[d] out of the suicide H.S.P. safety cells" and because the officers working on the second floor

had been told that Plaintiff had attempted suicide on other occasions. *Id.* Plaintiff's Complaint also indicates that both Defendants Pattillo and Cole are directly responsible for inmate care. *Turner*, 2022 WL 458238 at *3. Plaintiff has therefore alleged facts sufficient at this early stage to suggest that these Defendants were deliberately indifferent to a substantial risk that he would harm himself, and his claims against them must therefore proceed for further factual development.

Plaintiff's allegations against Defendant Morelock, on the other hand, are not sufficient to state an actionable constitutional claim. First, it is unclear whether Defendant Morelock could even be considered a state actor in this case. As previously discussed, a § 1983 plaintiff must show that the allegedly unlawful act or omission was committed by a person acting under color of state law. *Hale*, 50 F.3d at 1582. Public defenders are not considered state actors when they are performing their "traditional functions as counsel to a defendant in a criminal proceeding" and are therefore not generally subject to suit under section 1983. *Polk Cnty. v. Dodson*, 454 U.S. 312, 318-19 (1981). Even if Defendant Morelock could be considered a state actor under the unique facts of this case, however, Plaintiff has failed to state an actionable § 1983 claim against her. First, although Plaintiff contends that he emailed Defendant Morelock to advise her that he was having suicidal thoughts, he does not allege that she ever responded to these emails or plead facts indicating that she was otherwise subjectively aware of Plaintiff's mental state. *See* Compl. 5, ECF No. 1. Second—and more importantly—Defendant Morelock is not an individual who has any direct responsibility for providing inmate care at the jail. *Turner*, 2022 WL 458238 at

*3. Plaintiff's claims against Defendant Morelock should therefore be dismissed without prejudice.

### C. Claims against Defendant Jefferson

#### 1. Retaliation Claims

Plaintiff raises several claims against Defendant Jefferson based on his confiscation of Plaintiff's blanket while Plaintiff was housed in a safety cell with several other inmates. First, Plaintiff contends that the confiscation was retaliatory. It is well established that an adverse action imposed in retaliation for a prisoner's exercise of a constitutionally protected right is actionable. *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989) (per curiam). To state a retaliation claim, an inmate generally needs to show that he engaged in protected conduct; that the prison official's retaliatory conduct adversely affected the protected conduct; and a causal connection between the protected conduct and the adverse action. *See, e.g., Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011). Plaintiff alleges that when Defendant Jefferson ordered him to relinquish his blanket, Plaintiff expressed concern about being in the cell "naked wit[h] 3 other men." Compl. 9, ECF No. 1. Plaintiff alleges that Defendant Jefferson responded, "I don't care . . . ya been around here writ[]ing all them grievances and . . . you done got everybody around here in trouble[.]" *Id.* Plaintiff has thus alleged facts sufficient to show that Defendant Jefferson took Plaintiff's blanket in retaliation for Plaintiff's filing of grievances. His retaliation

claims against Defendant Jefferson shall therefore proceed for further factual development.[2]

### 2. *Excessive Force Claims*

Plaintiff also alleges that Defendant Jefferson used excessive force when he seized the blanket. These claims also arise under the Fourteenth Amendment. *Piazza v. Jefferson Cnty., Ala.*, 923 F.3d 947, 951-52 (11th Cir. 2019). The Supreme Court has clarified that "a pretrial detainee raising a Fourteenth Amendment claim needn't prove an officer's subjective intent to harm but instead need only show that 'the force purposely or knowingly used against him was objectively unreasonable.'" *Id.* at 952 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015)). "The objective-reasonableness determination must be made 'from the perspective of a reasonable officer on the scene.'" *Id.* To determine whether the amount of force used was objectively reasonable, the Court must consider "the facts and circumstances of each particular case," including "the relationship between the need for use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 397 (internal quotation marks and citation omitted).

---

[2] The Court notes that Plaintiff also alleges that Defendant Jefferson conspired with an unnamed nurse to retaliate against Plaintiff and to use excessive force against him. *See, e.g.,* Compl. 9, ECF No. 1. As noted in section III.A. above, it is recommended that all claims against the Doe Defendants in this case, including this unnamed nurse, be dismissed without prejudice.

10

In this case, Plaintiff alleges that Defendant Jefferson "punched and elbowed the Plaintiff in the left side of the head and tried to sweep him off his feet." Compl. 9, ECF No. 1. Plaintiff also contends that he "is having trouble seeing out of his left eye because 2 black spots have appeared because of the punch an[d] elbow to his left temple." *Id.* at 11. While it appears from the Complaint that Plaintiff did not immediately comply with Defendant Jefferson's request to relinquish his blanket, the Court cannot say at this early stage that Plaintiff's excessive force claims are entirely frivolous based on the factors outlined in *Kingsley*. These claims against Defendant Jefferson therefore also require further factual development.

### 3. Bodily Privacy Claims

Plaintiff's allegations also give rise to a claim that Defendant Jefferson violated his right to bodily privacy when he confiscated Plaintiff's blanket. It is well established that "prisoners retain a constitutional right to bodily privacy." *Fortner v. Thomas*, 983 F.2d 1024, 1030 (11th Cir. 1993). This right is limited by the nature of incarceration, but it is clear that "absent a legitimate reason," individuals have "the right not to have their genitals exposed to onlookers." *Mitchell v. Stewart*, 608 F. App'x 730, 735 (11th Cir. 2015) (per curiam).

In this case, Plaintiff alleges that Defendant Jefferson confiscated Plaintiff's blanket, which left him naked and unable to cover himself for hours. During this time, Plaintiff's genitals were exposed to other inmates and jail officials, including at least one jail official of the opposite sex. *See, e.g.,* Compl. 8-9, ECF No. 1. When Plaintiff's allegations are taken as true, as they must be at this early stage, they suggest that Defendant

11

Jefferson did not have a legitimate reason to confiscate Plaintiff's blanket and that Plaintiff's genitals were involuntarily exposed as a result. As such, Plaintiff's bodily privacy claims against Defendant Jefferson shall therefore proceed for further factual development.

      D.     Conditions-of-Confinement Claims

Finally, Plaintiff mentions that the safety cells at the jail are not cleaned on a regular basis and that "thier [sic] is feces on the walls" of the cells "that has been on the walls ever[] since Plaintiff came to the county jail back in March 2021[.]" Compl. 11, ECF No. 1. Plaintiff thus contends that these "unsanitary living conditions" violated his constitutional rights. *Id.*

Conditions of confinement imposed prior to conviction are reviewed pursuant to the Fourteenth Amendment's Due Process Clause rather the Eighth Amendment's Cruel and Unusual Punishment Clause, which is applicable to convicted prisoners. *Hamm v. Dekalb Cnty.*, 774 F.2d 1567, 1572 (11th Cir. 1985). The standard with respect to providing pretrial detainees with basic necessities while incarcerated, however, is the same standard as required by the Eighth Amendment for convicted persons. *Id.* at 1574. Thus, to state a conditions-of-confinement claim, a prisoner must show that the deprivations he suffers are objectively and sufficiently "serious" or "extreme" so as to constitute a denial of the "minimal civilized measure of life's necessities." *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010). This standard is only met when the challenged conditions pose "an unreasonable risk of serious damage to [the prisoner's] future health or safety," *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (internal quotation marks omitted), or if

12

society "considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," *Helling v. McKinney*, 509 U.S. 25, 36 (1993). A prisoner must also show that prison officials had the requisite state of mind, *i.e.*, that the officials knew of the excessive risk to inmate health or safety and disregarded that risk. *See Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999).[3]

      Plaintiff's claims concerning the lack of sanitation in the safety cells should be dismissed. As a preliminary matter, Plaintiff does not clearly identify which named Defendant was responsible for the conditions of the safety cells. Plaintiff's claims could be dismissed on this ground alone. *Douglas v. Yates*, 535 F.3d 1316, 1321-22 (11th Cir. 2008) (dismissal of defendants appropriate where plaintiff failed to allege facts associating defendants with a particular constitutional violation). In addition, Plaintiff has failed to allege facts sufficient to show the type of extreme deprivation that would violate the Fourteenth Amendment. Plaintiff was only confined in the safety cell from January 31, 2022, until February 3, 2022. Compl. 8, ECF No. 1. Other than alleging that there was an unspecified amount of feces on the walls of the cell, he does not provide any other description of the extent of the allegedly unsanitary conditions, nor does he allege that he suffered any adverse physical effects due to those conditions. *Id.* Plaintiff has therefore failed to state a claim upon which relief may be granted. *Compare Smith v. Copeland*, 87

---

[3] The Eleventh Circuit recently indicated that it will continue to use the subjective deliberate indifference standard unless a pretrial detainee is asserting an excessive force claim. *See Swain v. Junior*, 961 F.3d 1276, 1285 n.4 (11th Cir. 2020).

F.3d 265, 268 (8th Cir. 1996) (holding that "[e]xposure to raw sewage may in some cases amount to cruel and unusual punishment," but pretrial detainee's allegations that he was exposed to raw sewage for four days due to overflowing toilet in his cell did "not rise to a level of constitutional significance") *and Anderson v. Chapman*, No. 3:12-cv-88 (CAR), 2013 WL 4495827, at *2, 4 (M.D. Ga. Aug. 20, 2013) (finding that prisoner who "was forced to sleep on the floor with dried urine, blood, and feces" for five days while in suicide prevention cell did not show that conditions amounted to cruel and unusual punishment) *with Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020) (per curiam) (holding that six days' confinement in "shockingly unsanitary cells," including one "covered nearly floor to ceiling in massive amounts of feces: all over the floor, the ceiling, the window, the walls, and even packed inside the water faucet" would violate the Eighth Amendment).

### IV. Conclusion

For the foregoing reasons, Plaintiff's motion to proceed *in forma pauperis* (ECF No. 10) is **GRANTED,** and Plaintiff's claims that Defendants Pattillo and Cole failed to prevent his suicide attempt and his excessive force, retaliation, and bodily privacy claims against Defendant Jefferson shall proceed for further factual development. It is **RECOMMENDED**, however, that Plaintiff's remaining claims be **DISMISSED without prejudice**.

### OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Clay D. Land, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this

Recommendation. Any objection is limited in length to **TWENTY (20) PAGES**. *See* M.D. Ga. L.R. 7.4. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

Having found that certain of Plaintiff's allegations against Defendants Pattillo, Cole, and Jefferson require further factual development, it is accordingly **ORDERED** that service be made on these Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act. Defendant is reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. All Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely

dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff. The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure. The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with

his custodian.  **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendant (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court.  This 90-day period shall run separately as to Plaintiff and Defendants beginning on the date of filing of Defendants' answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court.  No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party.  The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery:  except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party.  No party shall be required to respond to any such requests which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED AND RECOMMENDED** this 24th day of June, 2022.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE